Filed                    20-CI-002406    04/08/2020         David L. Nicholson, Jefferson Circuit Clerk

CIVIL ACTION NO. _____

**JEFFERSON CIRCUIT COURT**
**DIVISION** _____
**HONORABLE** _____

**KRISTOPHER KING**

**PLAINTIFF**

v.

**TRADER JOE'S EAST, INC.**

**DEFENDANT**

SERVE:     REGISTERED AGENT
           Paracorp Incorporated
           828 Lane Allen Road, Suite 219
           Lexington, KY 40504

## COMPLAINT

The Plaintiff, Kristopher King (hereinafter "King" or "Plaintiff") files his Complaint against the Defendant, Trader Joe's East, Inc. (hereinafter "Trader Joe's" or "Defendants"), and in support hereof states as follows:

### I.     PARTIES, JURISDICTION AND VENUE

1.     King is a resident of Louisville, Jefferson County, Kentucky.

2.     Trader Joe's East, Inc. is a foreign corporation doing business in Louisville, Jefferson County, Kentucky.

3.     The events underlying the claims set forth herein took place in Louisville, Jefferson County, Kentucky.

4.     Venue and jurisdiction are proper in this Court.

5.     The amount in controversy, including costs and fees, is greater than the minimum jurisdictional amount of this Court.

6.     King's causes of action against Trader Joe's are brought pursuant to KRS § 338.031, KRS § 39A.090, KRS § 446.070, KRS § 411.184 and the common laws of Kentucky.

Filed                    20-CI-002406    04/08/2020         David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Package:000003 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000003 of 000035

Filed            20-CI-002406    04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

## II.    BACKGROUND FACTS

7.    King is a former employee of Trader Joe's, specifically its location in Louisville, Kentucky.

8.    King began his employment at Trader Joe's in October 2011, in the position of Crew Member.

9.    On March 6, 2020, due to the outbreak of the global pandemic known as the COVID-19 virus, Governor Beshear declared a State of Emergency for Kentucky in Executive Order 2020-215. In the same Order, Governor Beshear delegated his authority to coordinate efforts giving effect to emergency needs to the Department of Public Health and the Governor's Designee. [A copy of the 3/6/20 Executive Order is attached hereto as Exhibit "1"].

10.    Following Governor Beshear's Executive Order 2020-215 and issuance of a State of Emergency for Kentucky, Trader Joe's failed to take any specific steps to promote the health and safety of its employees regarding the spread of COVID-19.

11.    On approximately March 11, 2020, Trader Joe's management specifically informed Trader Joe's employees that they were not allowed to wear gloves while on-the-job.

12.    Further, Trader Joe's management stated that employees could only wear gloves if stated in a doctor's order and upon application and submission of Americans with Disabilities' paperwork requesting such accommodation by a physician.

13.    On or around March 11, 2020, King began experiencing certain symptoms associated with COVID-19, including, but not limited to a dry cough, fever, sore throat, congestion, and headaches. Concerned for his well-being, as well as the well-being of his fellow Trader Joe's co-workers and customers, King called Trader Joe's management, informed them of

Package:000004 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000004 of 000035

2

EXHIBIT A

his symptoms, and that he would not be coming to work for his regularly scheduled shift due to his illness.

14.     The following day, March 12, 2020, King was seen by a physician at The Little Clinic regarding his symptoms and sickness. Specifically, the physician diagnosed King with bronchitis and strep throat, prescribed him with medication, and instructed him to remain off of work until March 14, 2020. [A copy of King's 3/12/20 physician's note is attached as Exhibit "2"].

15.     During his appointment at The Little Clinic, the physician opined that while she did not believe King had severe enough symptoms warranting an emergency room visit to be tested for COVID-19, she did precaution King that self-quarantining is always a safe measure to abide by if his symptoms did not recede upon medication.

16.     Following his doctor's appointment, King immediately filled his prescription and began taking his medication.

17.     On March 13, 2020, King created a private Facebook group with his fellow Trader Joe's employees, specifically regarding concerns that he and other employees had about Trader Joe's lack of support in implementing specific safety measures for its employees.

18.     On March 14, 2020 and March 15, 2020, due to still experiencing symptoms associated with COVID-19, King did not return to work at Trader Joe's in an effort to self-quarantine himself and to protect the health and safety of his co-workers and Trader Joe's customers.

19.     King called Trader Joe's management on these specific days and informed the Company that he was still experiencing COVID-19 symptoms and believed it was best to self-quarantine.

3

EXHIBIT A

Package:000005 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000005 of 000035

Filed                    20-CI-002406    04/08/2020              David L. Nicholson, Jefferson Circuit Clerk

20.     On March 15, 2020, King posted in the Facebook group with fellow Trader Joe's employees. Specifically, King raised the following concerns regarding Trader Joe's lack of implementing any safety measures to protect employees and their health due to the COVID-19 pandemic: "No plan/strategy in place on ways to keep the crew safe;" "Crew getting in trouble for wearing gloves at the register (because of company policy, not CDC recommendations);" and "Mates caring more about the store than crew members (specifically one mate asking a sick crew member if they HAD TO? go home)." [A copy of the 3/15/2020 Facebook post is attached as Exhibit "3"].

21.     On March 17, 2020, the Commissioner of Public Health and the Governor's Designee issued an Order permitting businesses providing "food, grocery and consumer goods" to remain open. However, this Order was "subject to limitations provided in prior orders" and businesses remaining open "must, to the extent practicable, implement Centers for Disease Control ("CDC") guidance, including:

    • maintaining a distance of 6 feet between persons;

    • ensuring employees practice appropriate hygiene measures, including regular, thorough handwashing;

    • ensuring that employees who are sick remain home; and

    • regularly cleaning and disinfecting frequently touched objects and surfaces."

    [A copy of the 3/17/2020 Executive Order is attached as Exhibit "4"].

4

EXHIBIT A

Filed        20-CI-002406   04/08/2020        David L. Nicholson, Jefferson Circuit Clerk

22.     King self-quarantined himself until March 21, 2020, when he then reported to work at Trader Joe's.

23.     Upon arriving at work that day, March 21, 2020, King presented his doctor's note to Trader Joe's Mate, Travis Todd, and again informed him that he had been self-quarantining due to COVID-19 symptoms, which were no longer present.

24.     Later during his shift on March 21, 2020, Trader Joe's Captain, Craig Wood (hereinafter "Wood"), whom is a member of management, requested a sit-down meeting with King.

25.     During the meeting, Wood presented King with two screenshots of the Facebook posts that King had posted on the Trader Joe's Facebook group page with King's fellow co-workers and reprimanded King for the same.

26.     King admitted that he had created the Facebook group and that he stood by the concerns and complaints as specifically mentioned in them regarding Trader Joe's lack of implementing any safety policies for its employees due to the COVID-19 pandemic and in response to Governor Beshear's Executive Orders and mandates from the CDC.

27.     Additionally during the meeting, King requested and complained that Trader Joe's should implement the following safety protocols and provide the following products to abide by Governor Beshear's Executive Orders and mandates from the CDC in an attempt to promote the health and well-being of its employees, specifically its Crew Members: 1) sanitizer and cleaning products that meet the CDC and EPA guidelines; 2) sanitizer and gloves at every register; 3) gloves need to be changed after every customer interaction; 4) mandate that Crew Members wipe down the credit card machines after every use; 5) a regular sanitizing and cleaning schedule of the entire store; and 6) the right to wear masks and/or gloves and/or aprons if an employee so chooses to.

Package: 000007 of 000035

Presiding Judge  HON.  OLU A. STEVENS (630305)

Package: 000007 of 000035

5

EXHIBIT A

28.      During the conversation and meeting on March 21, 2020, Wood made multiple requests for King to voluntarily quit and/or resign from his employment at Trader Joe's, to which King declined each and every time.

29.      At the conclusion of the meeting on March 21, 2020, and after King voiced his complaints about Trader Joe's lack of action regarding employee safety and health due to the COVID-19 pandemic and voiced his requests of what Trader Joe's should implement in order to abide by Governor Beshear's Executive Orders and mandates from the CDC, Wood told King that he was going to evaluate King's employment situation, but that "I don't see your [King's] Crew Member status looking good moving forward."

30.      Following Wood's extremely threatening and retaliatory comment in response to King's warranted and legally protected complaints and requests based upon Governor Beshear's Executive Orders and mandates from the CDC regarding the safety and health of Trader Joe's employees, King requested that he take unpaid time off for the remainder of his shift on March 21, 2020 and for the entirety of his shift for March 22, 2020. King's request was granted.

31.      King returned to work for his regularly scheduled shift on March 23, 2020.

32.      On March 28, 2020, only one (1) week after bringing his complaint and specific requests to act in accordance with Governor Beshear's Executive Orders and mandates from the CDC regarding the health and safety of Trader Joe's employees to Wood, Trader Joe's, specifically Wood, terminated King's employment, effective immediately.

33.      Trader Joe's pretextual reasons for terminating King were citing to two (2) unsubstantiated incidents in 2019 regarding behavior, as well as specifically referencing the creation of the Facebook group page and posts with other Trader Joe's employees in an effort to voice their concerns and complaints about Trader Joe's complete lack of implementing safety

6

EXHIBIT A

Package:000008 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000008 of 000035

protocols, which would abide by Governor Beshear's Executive Orders and mandates from the CDC.

34.     On April 2, 2020, The New York Times published an article regarding Trader Joe's response to COVID-19, including specific excerpts from King regarding his employment at Trader Joe's, his creation of the Facebook page to create a forum where employees could discuss the company's lack of implementing proper safety measures, and his termination only a week after creating the Facebook page. [A copy of the 4/2/2020 New York Times Article is attached as Exhibit "5"].

35.     Trader Joe's spokeswoman, Kenya Friend-Daniel, is quoted in the article stating that she "did not dispute the details of Mr. King's firing, though she said the company allowed employees to communicate on Facebook." Further, the article states that "[t]he store manager in Louisville did not respond to a request for comment." [Exhibit "5"].

36.     Upon information and belief, and only after the release of the New York Times article, Trader Joe's, specifically the Louisville, Kentucky store which King had been an employee, began to implement many of the requests that King had complained about in not only the Facebook posts, but also during his March 21, 2020 meeting with Wood.

37.     Trader Joe's retaliated against King and terminated King's employment in violation of Kentucky public policy because King complained and made numerous specific requests for Trader Joe's to implement safety measures in its store in accordance with Governor Beshear's Executive Orders and mandates from the CDC.

Package:000009 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000009 of 000035

7

EXHIBIT A

38.     Trader Joe's decision to terminate King immediately after and directly due to King's complaints and requests to the Company's management to adhere to and implement safety measures to abide by Governor Beshear's Executive Orders and mandates from the CDC constitutes oppressive, malicious, and intentional conduct.

## III.    CLAIMS AND CAUSES OF ACTION

### A.    PUBLIC POLICY WRONGFUL DISCHARGE – KRS § 338.010, et seq.

39.     King re-alleges all allegations contained in paragraphs 1 through 38 above as if fully set forth herein.

40.     Trader Joe's discharged King in violation of Kentucky public policy because King brought legitimate complaints and concerns to Trader Joe's regarding workplace safety amid the global COVID-19 pandemic.

41.     The complaints King made to Trader Joe's management regarding workplace safety constitute the exercise of a legally protected right conferred by well-established Kentucky law.

42.     Specifically, Kentucky's public policy on workplace safety is codified in KRS § 338.011:

> The General Assembly finds that occupational accidents and diseases produce personal injuries and illness including loss of life as well as economic loss. Therefore, the General Assembly declares that it is the purpose and policy of the Commonwealth of Kentucky to promote the safety, health and general welfare of its people by preventing any detriment to the safety and health of all employees, both public and private, covered by this chapter, arising out of exposure to harmful conditions and practices at places of work and otherwise to preserve our human resources by providing for education and training, inspection of workplaces, consultation, services, research, reports and statistics, and other means of furthering progress in the field of occupational safety and health.

43.     KRS § 338.031 states:

> Each employer. . . [s]hall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees[.]

8

EXHIBIT A

Package:000010 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000010 of 000035

Filed                    20-CI-002406    04/08/2020              David L. Nicholson, Jefferson Circuit Clerk

44.     King is entitled to recover from Trader Joe's the damages sustained by reason of Trader Joe's violation of this Kentucky statute.

45.     As a result of Trader Joe's actions, King has suffered monetary damages in an amount in excess of the minimum jurisdictional limits of this Court.

**B.      PUBLIC POLICY WRONGFUL DISCHARGE – KRS § 39A.010, et seq.**

46.     Plaintiff reaffirms, re-avers and re-alleges all allegations contained in paragraphs 1 through 45, inclusive herein, as though fully set forth at this point in their entirety.

47.     Trader Joe's discharged King in violation of Kentucky public policy because King brought legitimate complaints and concerns to Trader Joe's regarding Governor Beshear's executive orders concerning workplace safety amid the global COVID-19 pandemic.

48.     The complaints King made to Trader Joe's management regarding workplace safety constitute the exercise of a legally protected right conferred by well-established Kentucky law.

49.     King's decision to make complaints and report concerns regarding workplace safety, employee endangerment, and violation of recently enacted executive orders were legally protected activities, provided for by the Kentucky Revised Statutes.

50.     Kentucky's public policy related to executive power in times of disaster or emergency is set forth in KRS § 39A.010:

> The General Assembly realizes the Commonwealth is subject at all times to disaster or emergency occurrences which can range from crises affecting limited areas to widespread catastrophic events, and that response to these occurrences is a fundamental responsibility of elected government in the Commonwealth. . . . [I]n order to protect life and property of the people of the Commonwealth, and to protect public peace, health, safety, and welfare, and the environment; and in order to ensure the continuity and effectiveness of government in time of emergency, disaster, or catastrophe in the Commonwealth, it is hereby declared to be necessary . . . [t]o confer upon the Governor, the county judges/executive of the counties, the mayors of the cities and urban-county governments of the Commonwealth, and the chief executive of other local governments the emergency powers provided in KRS Chapters 39A to 39F [and to] authorize the establishment of a statewide comprehensive emergency management program and integrated emergency management system, the

9

Filed                    20-CI-002406    04/08/2020              David L. Nicholson, Jefferson Circuit Clerk

Package:000011 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000011 of 000035

**EXHIBIT A**

Filed          20-CI-002406    04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

promulgation of orders or administrative regulations, and the taking of other steps necessary and appropriate to carry out the provisions of KRS Chapters 39A to 39F.

51.      Pursuant to KRS § 39A.090, "The Governor may make, amend, and rescind any executive orders as deemed necessary to carry out the provisions of KRS Chapters 39A to 39F."

52.      King's complaints to Trader Joe's are consistent with the plea to obey Governor Beshear's Executive Orders, and constitute a protected activity.

53       King was terminated due to participating in a protected activity, specifically for the complaints and concerns that he raised to Trader Joe's about its refusal to abide by Kentucky's safety, emergency, and disaster law and/or for demanding compliance with Governor Beshear's Executive Orders pursuant to such Kentucky law.

54.      King is entitled to recover from Trader Joe's the damages sustained by reason of Trader Joe's violation of this Kentucky statute.

55.      As a result of Trader Joe's actions, King has suffered monetary damages in an amount in excess of the minimum jurisdictional limits of this Court.

## C.      PRIVATE CAUSE OF ACTION FOR TRADER JOE'S VIOLATION OF KRS § 338.010, *et seq.*

56.      Plaintiff reaffirms, re-avers and re-alleges all allegations contained in paragraphs 1 through 55, inclusive herein, as though fully set forth at this point in their entirety.

57.      KRS § 338.010, *et seq.* provides no civil remedy for individuals, including King, who suffer damages from the violation of the statute.

58.      King is within the class of individuals that KRS § 338.010, *et seq.* is intended to protect.

59.      King's injuries are of the type that KRS § 338.010, *et seq.* was designed to prevent.

10

Filed          20-CI-002406    04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

Package:000012 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000012 of 000035

EXHIBIT A

Filed                    20-CI-002406    04/08/2020        David L. Nicholson, Jefferson Circuit Clerk

60.    KRS § 446.070 provides individuals, like King, are entitled to recover damages suffered due to Trader Joe's violation of KRS § 338.010, *et seq*.

61.    KRS § 446.070 states: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

62.    As a result of Trader Joe's actions and violations of KRS § 338.010, *et seq*., King is entitled to monetary damages pursuant to KRS § 446.070, in an amount in excess of the minimum jurisdictional limits of this Court.

### D.    PRIVATE CAUSE OF ACTION FOR TRADER JOE'S VIOLATION OF KRS § 39A.010, et seq.

63.    Plaintiff reaffirms, re-avers and re-alleges all allegations contained in paragraphs 1 through 62, inclusive herein, as though fully set forth at this point in their entirety.

64.    KRS § 39A.010, et seq. provides no civil remedy for individuals, including King, who suffer damages from the violation of the statute.

65.    King is within the class of individuals that KRS § 39A.010, *et seq*. is intended to protect.

66.    King's injuries are of the type that KRS § 39A.010, *et seq*. was designed to prevent.

67.    KRS § 446.070 provides individuals, like King, are entitled to recover damages suffered due to Trader Joe's violation of KRS § 39A.010, *et seq*.

68.    KRS § 446.070 states: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

11

Filed                    20-CI-002406    04/08/2020        David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Package: 000013 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package: 000013 of 000035

69.    As a result of Trader Joe's actions and violations of KRS 39A.010 *et seq.*, King is entitled to monetary damages pursuant to KRS § 446.070, in an amount in excess of the minimum jurisdictional limits of this Court.

### E.    PUNITIVE DAMAGES (KRS § 411.184)

70.    Plaintiff reaffirms, re-avers and re-alleges all allegations contained in paragraphs 1 through 69, inclusive herein, as though fully set forth at this point in their entirety.

71.    Due to Trader Joe's oppressive, malicious, and intentional conduct toward King, King requests that he be awarded punitive damages against Trader Joe's, in the amount in excess of the minimum jurisdictional limits of this Court.

### IV.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Kristopher King, respectfully prays that he be awarded the following relief and all other relief to which he may be entitled against the Defendant, Trader Joe's East, Inc.:

A.    Trial by jury as to all claims;

B.    Judgment against Defendant on all claims asserted herein;

C.    Compensatory damages including, but not limited to, past and future lost wages and past and future lost benefits;

D.    Compensatory damages including, but not limited to, emotional distress, mental anguish, humiliation and embarrassment;

E.    All statutory remedies provided by Kentucky's public policy wrongful discharge laws;

12

EXHIBIT A

Filed          20-CI-002406    04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

F.      Punitive damages, pursuant to KRS § 411.184, against the Defendant based upon its reckless disregard for and/or intentional conduct toward King's rights and to punish and deter similar future unlawful conduct;

G.      An award of Plaintiff's attorney fees, costs and expenses;

H.      Statutory interest on all monetary damage awards, verdicts, or judgments; and

I.      All additional and other relief to which King may be entitled.

Respectfully submitted,

THE ZOPPOTH LAW FIRM

/s/ Bradley S. Zoppoth
Bradley S. Zoppoth
635 W. Main St., Suite 400
Louisville, KY 40202
(502) 568-8884
bsz@zoplaw.com
*Counsel for Plaintiff, Kristopher King*

Package:000015 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000015 of 000035

13

EXHIBIT A

Filed                    20-CI-002406    04/08/2020              David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT

1

Package:000016 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000016 of 000035

Filed            20-CI-002406    04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Filed          20-CI-002406   04/08/2020          David L. Nicholson, Jefferson Circuit Clerk



**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

**Secretary of State**
Frankfort
Kentucky

2020-215

March 6, 2020

### STATE OF EMERGENCY

**WHEREAS,** On January 31, 2020, the United States Department of Health and Human Services Secretary Alex Azar declared a public health emergency for the novel coronavirus (COVID-19), beginning on January 27, 2020; and

**WHEREAS,** there are numerous confirmed lab cases of COVID-19 throughout the United States; and

**WHEREAS,** COVID-19, a respiratory disease than can result in serious illness or death, is caused by the SARS-CoV-2 virus, which is a new strain of coronavirus that had not been previously identified in humans and can easily spread from person to person; and

**WHEREAS,** the CDC identifies the potential public health threat posed by COVID-19 both globally and in the United States as "high", and has advised that person-to-person spread of COVID-19 will continue to occur globally, including within the United States; and

**WHEREAS,** the World Health Organization currently indicates there are 98,192 confirmed cases of COVID-19 worldwide, and the CDC currently indicates that 164 of those cases are in the United States; and

**WHEREAS,** the planning and preparedness of all state and local agencies for a COVID-19 public health emergency in the Commonwealth is a concern to all Kentuckians; and

**WHEREAS,** the Kentucky Department of Emergency Management has special personnel and equipment resources to assist the state and local authorities in the protection of life, public health and safety, to promote the public welfare, to prevent undue loss and suffering, and to mitigate the effects of such an event; and

**WHEREAS,** the Kentucky Department of Public Health has specially trained personnel and resources to assist the state and local authorities in the protection of life, public health and safety, through coordinating a response to this emergency; and

**WHEREAS,** it is both appropriate and desirable to combine the resources of the Kentucky Department of Emergency Management and the Kentucky Department of Public Health in joint operations with selected federal, state and local agencies to attain the maximum effective response to the circumstances described herein;

EXHIBIT A

Filed                    20-CI-002406    04/08/2020          David L. Nicholson, Jefferson Circuit Clerk



**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

**Secretary of State**
Frankfort
Kentucky

   **NOW, THEREFORE, I,** Andy Beshear, Governor of the Commonwealth of Kentucky,
by virtue of the authority vested in me by Chapter 39A of the Kentucky Revised Statutes, declare
that a State of Emergency exists in the Commonwealth of Kentucky and do hereby order and
direct the issuance of appropriate state active duty orders for the necessary officers, troops,
personnel, equipment, including the resources of the Kentucky National Guard and other
logistical support necessary for an immediate response to the novel coronavirus (COVID-19)
emergency in the Commonwealth.  I further order and direct as follows:

1.  The Division of Emergency Management within the Department of Military Affairs and
    the Kentucky Department of Public Health shall coordinate the response and relief
    activities of all state agencies and private relief organizations in response to the COVID-
    19 emergency described herein.

2.  The Division of Emergency Management within the Department of Military Affairs shall
    execute the Kentucky Emergency Operations Plan and, from the Kentucky Emergency
    Operations Center, shall coordinate the relief and response activities of all state agencies
    and private relief organizations in response to this emergency.

3.  The Adjutant General is authorized to issue active duty orders for the mobilization of
    such National Guard personnel and equipment as he may determine to protect life and
    safety, to continue essential public services, and to prevent undue loss and suffering.

4.  The Division of Emergency Management is authorized to request assistance, federal,
    state, local, private sector, volunteer, and donated resources as may be available to
    minimize human suffering and to restore essential services to the general population and
    to assist state and local governments and individuals impacted by this emergency.

5.  The Finance and Administration Cabinet is directed to provide assistance with incident
    resource management, procurements, and contracting and to fund the urgent operational
    and/or response of the Division of Emergency Management and the unbudgeted
    expenditures and obligations of other state agencies that are incurred in response and
    recovery from this emergency incident and in executing the provisions of this Executive
    Order.

6.  The Kentucky Department of Public Health and all other state agencies shall provide
    sufficient personnel required for the staffing of the Kentucky Emergency Operations
    Center or other command, control, and coordination points as may be designated by the
    Division of Emergency Management's Director and shall provide such personnel,
    vehicles, equipment, and other resources needed to protect life and property and to ensure
    continuation, restoration, and recovery of essential public services.

Package: 000018 of 000035

Presiding Judge: HON  OLU A. STEVENS (630305)

Package : 000018 of 000035

Filed                20-CI-002406    04/08/2020              David L. Nicholson, Jefferson Circuit Clerk



**ANDY BESHEAR**
**GOVERNOR**

**EXECUTIVE ORDER**

**Secretary of State**
**Frankfort**
**Kentucky**

7.  The Kentucky Office of Homeland Security ("KOHS") shall provide information to individuals and private organizations, including volunteer and religious organizations, regarding how they can best prepare for and respond to the COVID-19 emergency described herein and whom to contact to volunteer help or services. Further, the KOHS shall specifically identify and encourage private organizations to commit to provide food, shelter, personnel, equipment, materials, consultation, and advice, or other services needed to respond to the COVID-19 emergency. Additionally, the KOHS shall coordinate its efforts with the federal Department of Homeland Security, as necessary, and administer the Kentucky Intelligence Fusion Center to facilitate information sharing about COVID-19 among public safety and public service agencies at the federal, state, and local levels, as well as the private sector.

This order is effective March 6, 2020.

MICHAEL G. ADAMS
Secretary of State

ANDY BESHEAR, Governor
Commonwealth of Kentucky

Package:000019 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000019 of 000035

Filed              20-CI-002406    04/08/2020            David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A



Package: 000020 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package:  000020 of 000035

EXHIBIT A

Filed          20-CI-002406     04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

Package:000021 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000021 of 000035

# EXHIBIT

# 2

Filed          20-CI-002406     04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Filed          20-CI-002406   04/08/2020          David L. Nicholson, Jefferson Circuit Clerk



Date:

To whom it may concern,

This is a note to confirm that KRISTOPHER KING was seen in my office on 03/12/2020 for an appointment.  He/She will require _1-2_____days for recovery and/or it is recommended they return to work/school/physical activity on _3/14/2020_____.     Please     take     this     into consideration when reviewing this person's absence.

If you have any questions in this regard, please do not hesitate to call me.

Sincerely,

**Moppins, Carmelita**

Package : 000022 of 000035          Presiding Judge: HON. OLU A. STEVENS (630305)          Package : 000022 of 000035

EXHIBIT A

Filed          20-CI-002406      04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT

# 3

Package:000023 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000023 of 000035

EXHIBIT A

Filed                    20-CI-002406    04/08/2020         David L. Nicholson, Jefferson Circuit Clerk

**3:52** 

 **Kris King ▷ TJ's Break Room (employee forum)**                                        • • •
Sunday at 11:30 AM ·

### #MCP1

Make Crew Priority 1

I haven't been to work in over a week. Partly because I only work 3 days a week, but also because I've been very sick and feel it's irresponsible to go. But I've been watching things from afar. I've stayed in constant contact about the vibe of the store and what's going on. I have to say, overall I'm pretty disappointed in some of what I've heard, or actually the lack of what I've heard coming from the stores or the company.

- No plan/strategies in place on ways to keep the crew safe.
- Crew getting in trouble for wearing gloves at the register (because of company policy, not CDC recommendations)
- Mates caring more about the store than crew members (specifically one mate asking a sick crew member if they HAD TO? go home)
- Myself leaving a message with HR about my personal health situation as well as wanting general info about crew rights during this time, with NO CALL BACK.

I'm sure some of you have your own stories about not being supported, personal anxieties, feeling left alone in the trenches, little to no word from home office. We are in the middle of a global pandemic and for the most part, it feels like we've treated it sort of like our government has. No preparation, no plan, no protection outside of restoring AR (which to me looks more like a PR move for positive headlines) assuming we meet all the requirements. We want to prevent ourselves from getting sick, not just possibly be compensated if we do. We are vastly ill prepared for this. Where are our leaders and why aren't we being lead?

Filed                    20-CI-002406    04/08/2020         David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Package: 000024 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000024 of 000035

Filed          20-CI-002406   04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT

# 4

Package:000025 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000025 of 000035

Filed          20-CI-002406   04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Filed          20-CI-002406   04/08/2020        David L. Nicholson, Jefferson Circuit Clerk



## CABINET FOR HEALTH AND FAMILY SERVICES
## OFFICE OF LEGAL SERVICES

**Andy Beshear**
**Governor**

275 East Main Street, 5W-B
Frankfort, KY 40621
502-564-7905
502-564-7573
www.chfs.ky.gov

**Eric C. Friedlander**
**Acting Secretary**

**Wesley W. Duke**
**General Counsel**

### ORDER

March 17, 2020

On March 6, 2020, Governor Andy Beshear signed Executive Order 2020-215, declaring a state of emergency in the Commonwealth due to the outbreak of COVID-19 virus, a public health emergency. Pursuant to the authority in KRS 194A.025, KRS 214.020, and Executive Order 2020-215, the Cabinet for Health and Family Services, Department of Public Health, hereby orders the following directives to reduce and slow the spread of COVID-19:

1. By 5:00 p.m. on March 18, 2020, all public-facing businesses that encourage public congregation or, that by the nature of the service to the public, cannot comply with CDC guidelines concerning social distancing, shall cease all in-person operations.

2. These public-facing businesses that must close include entertainment, hospitality and recreational facilities, community and recreation centers, gyms and exercise facilities, hair salons, nail salons, spas, concert venues, theaters, and sporting event facilities.

3. For the avoidance of doubt, businesses providing food, food processing, agriculture, industrial manufacturing, feed mills, construction, trash collection, retail, grocery and consumer goods, home repair/hardware and auto repair, pharmacy, and other medical facilities, biomedical and healthcare, post offices, insurance, banks, gas stations, laundromats, veterinary clinics and pet stores, warehousing, storage, and distribution, public transportation, and hotel and commercial lodging may remain open, subject to limitations provided in prior



Filed          20-CI-002406   04/08/2020        David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Package:000026 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000026 of 000035

Filed          20-CI-002406   04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

orders, but must to the extent practicable implement Centers for Disease Control guidance, including:

- maintaining a distance of 6 feet between persons;

- ensuring employees practice appropriate hygiene measures, including regular, thorough handwashing;

- ensuring that employees who are sick remain home; and

- regularly cleaning and disinfecting frequently touched objects and surfaces.

4. Public-facing businesses that remain open shall post the attached sign at all entrances.

5. The Department of Public Health hereby delegates to local health departments the authority to take all necessary measures to implement this Order.

The Cabinet for Health and Family Services will monitor these directives continuously and may extend the directives beyond their current expiration date. The Cabinet will continue to provide information and updates to healthcare providers during the duration of this Public Health Emergency.

Steven J. Stack, M.D.
Commissioner of Public Health
Department of Public Health
Cabinet for Health and Family Services

Eric Friedlander
Acting Secretary
Governor's Designee

Filed          20-CI-002406   04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Package:000027 of 000035

Presiding Judge: HON. CLU A. STEVENS (630305)

Package : 000027 of 000035

Filed          20-CI-002406   04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

# Do you feel sick?



# If you are sick or have been in the last 24 hours, please **DO NOT ENTER.**

### To prevent the spread of germs:

- Wash your hands often with soap and water.
- Avoid touching your eyes, nose, and mouth.
- Cover your mouth when you cough or sneeze.
- Avoid close contact with sick people.
- Clean and disinfect frequently touched objects and surfaces.
- Stay home when you are sick.







Filed          20-CI-002406   04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Package: 000028 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000026 of 000035

Filed          20-CI-002406    04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

# ¿Se siente enfermo?



## Si está o ha estado enfermo en las últimas 24 horas, por favor **NO ENTRE.**

### Para prevenir la propagación de gérmenes:

- Lávese las manos frecuentemente con agua y jabón.
- Evite tocarse los ojos, la nariz y la boca.
- Cúbrase la boca cuando tosa o estornude.
- Evite el contacto cercano con las personas enfermas.
- Limpie y desinfecte los objetos y las superficies que se tocan frecuentemente.
- Quédese en casa cuando esté enfermo.







Filed          20-CI-002406    04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT A

Filed          20-CI-002406    04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT

# 5

Package:000030 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000030 of 000035

EXHIBIT A

Filed          20-CI-002406   04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

𝕿𝖍𝖊 𝕹𝖊𝖜 𝖄𝖔𝖗𝖐 𝕿𝖎𝖒𝖊𝖘   https://nyti.ms/2yx5ptz

## *Labor Fight Collides With the Pandemic at Trader Joe's*

The chain has aggressively opposed unionization efforts among its employees, who have been critical of its response to the coronavirus.

**By David Yaffe-Bellany**

April 2, 2020

On March 23, as the coronavirus pandemic put grocery workers on the front lines of a public health crisis, Trader Joe's sent a memo to store managers encouraging them to relay a message to employees: Joining a union might be a bad idea.

"It's not like buying toothpaste you don't end up liking," said the email, which listed a series of anti-union talking points, including a warning about the size of dues. "It's like buying a house ... you're in for the long term."

The pandemic has led to a wave of worker activism in recent weeks, as employees at Instacart, Amazon and Whole Foods have gone on strike and demanded increased protections. At Trader Joe's, a chain known for its outwardly cheerful work force, employees have criticized what they describe as the company's haphazard response to the crisis, reigniting a debate about union organizing that has simmered for years.

Workers hoping to form a union recently circulated a petition calling for Trader Joe's to offer "hazard pay," or an hourly rate of time and a half. And over the last few weeks, the Retail, Wholesale and Department Store Union has held talks with employees.

That nascent organizing effort seems to have alarmed Trader Joe's. At the end of March, store managers gave anti-union lectures during regularly scheduled "huddles" with staff, using talking points from the email. In one case, a regional manager visited stores to argue that the hazard pay petition was an opportunistic attempt to seduce workers into joining a union.

At a store in Philadelphia, the manager told a group of about 30 employees that "a union is a business and they're trying to take your money," according to two employees who attended the meeting. A store manager at a Trader Joe's in Maryland said that joining a union was like getting married and that "once you're in, it's very hard to get out," according to an employee who heard the comment.



Some workers say they have been told not to wear masks during the pandemic. Benjamin Norman for The New York Times

Managers at stores across the United States held similar discussions as worker unrest intensified, according to nearly 20 current and former employees. Most of the workers spoke on the condition of anonymity for fear of retaliation from the company. But in interviews, they said it felt as though the chain was taking advantage of a moment of anxiety to drive home an anti-union message.

"They are sitting around there worried about it because they are anti-union and this is the perfect time for us to unionize," said Kris King, a longtime Trader Joe's employee in Louisville, Ky. "They feel vulnerable."

A company spokeswoman, Kenya Friend-Daniel, said in a statement that Trader Joe's has "the right to express our opinion to crew members about the pros and cons of possible unionization." Trader Joe's is hardly the only retailer to actively oppose unionization. While workers at the grocery chain Kroger are unionized, Walmart has moved aggressively to squelch organizing efforts over the years.

Filed          20-CI-002406   04/08/2020          David L. Nicholson, Jefferson Circuit Clerk

Package:000031 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000031 of 000035

EXHIBIT A

Filed                    20-CI-002406    04/08/2020              David L. Nicholson, Jefferson Circuit Clerk

**Latest Updates: Markets and Business**

* Wall Street is set for an upbeat start to the week.

* A stress test was going to simulate economic disaster in Europe. It's no longer needed.

* As orders skyrocket, Amazon employees are asserting themselves.

See more updates                                                                                          Updated 1h ago

More live coverage: **Global   New York**

"Because a union has chosen to inject itself into the lives of our crew members during this time of crisis," Ms. Friend-Daniel said, "we have no alternative but to remind and share with our crew members the facts."

Like many grocery chains, Trader Joe's has taken a range of steps to protect employees during the pandemic, including cutting hours and closing stores. The company already has a reputation for generous pay and benefits, and it has offered bonuses to employees working during the pandemic, as well as a week of paid sick time to workers dealing with respiratory ailments.

But workers said the week of paid leave was insufficient, and noted that many of the bonuses distributed so far have amounted to only a couple of hundred dollars or less. They also expressed misgivings about the inconsistent safety measures across stores, where some managers have banned gloves and face masks, saying they frighten customers.



Kris King was fired after starting a Facebook group for Trader Joe's employees to talk about how the company was handling the pandemic. Luke Sharrett for The New York Times

Juan Boria, an employee at a Trader Joe's in the East Village in Manhattan, said he went to work last week wearing a mask made with fabric cut from a Hawaiian shirt so it would resemble the rest of the company uniform.

Sign up to receive our daily **Coronavirus Briefing**, an informed guide with the latest developments and expert advice.

| Sign Up |

"I couldn't tell you how many times I'd had customers coughing on their way up to me, touching their faces and grabbing items off the cart," Mr. Boria said.

A manager told him not to wear the mask in front of customers and sent him to the stockroom, where he found it difficult to stay six feet away from his co-workers. Mr. Boria left in the middle of the shift, fearing for his safety.

At various times, Trader Joe's has said employees are allowed to wear masks and gloves. But individual stores have adopted different protocols, and some of the chain's messages have confused employees.

"It is necessary to eliminate all lingering questions or confusion and set the record straight," a company official wrote in an email to employees last month. "Trader Joe's official policy on gloves is that we don't have a policy. We never have."

Now, however, medical experts are beginning to recommend protective equipment for retail workers. Ms. Friend-Daniel said Trader Joe's planned to supply masks for its stores, as other chains, like Walmart, have begun to do.

Filed                    20-CI-002406    04/08/2020              David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT A

Employees have also complained about delays in closing stores where workers test positive for the virus. At a meeting on March 20, a manager at the Trader Joe's in the Chelsea neighborhood of Manhattan told employees that a co-worker was infected, according to interviews with employees and social media messages about the meeting. But the store did not officially close for a deep clean until six days later, when Trader Joe's announced that multiple employees had tested positive.

The spokeswoman, Ms. Friend-Daniel, did not explain that delay. But the measures Trader Joe's takes in response to infections "vary with the circumstances of the potential exposure," she said.

The coronavirus pandemic is not the first time employees at Trader Joe's have mobilized to change company policy or that executives have pushed back. Over the years, company officials have aggressively opposed unionization, employees said, taking workers aside to track down rumors about efforts to organize staff.



The Trader Joe's in Chelsea was closed for a deep clean last month after several employees tested positive for the coronavirus. Benjamin Norman for The New York Times

Last spring, a transgender employee at a store in Albuquerque was told they could not wear a pin showing their preferred pronouns because the regional manager believed pronoun pins "do not reflect the values of our neighborhood stores," the employee, Ezra Greene, wrote in a Facebook group for Trader Joe's workers.

After other workers protested, the chain started allowing pins, as long as they were only an inch in diameter. Mx. Greene left Trader Joe's last summer.

The incident helped re-energize discussions about unionization that had simmered since 2016, when an employee in Manhattan complained to federal authorities that he was fired after managers judged his smile to be insufficiently "genuine."

In Louisville, Mr. King said Trader Joe's had mostly treated him well. But last week, he started a Facebook group for workers to discuss how the store was handling the pandemic. On Saturday, he was fired.

Mr. King had already been written up twice over the last year, he said, including for playfully tossing quinoa in the direction of a co-worker. The Facebook page was the final straw.

"This is not how we operate," he said his manager told him. "We don't operate by letting crew talk amongst themselves."

Ms. Friend-Daniel did not dispute the details of Mr. King's firing, though she said the company allowed employees to communicate on Facebook. The store manager in Louisville did not respond to a request for comment.

For his part, Mr. King said he would continue helping his former co-workers, who plan to submit a proposal to Trader Joe's requesting greater protections during the pandemic.

"They're family to me," he said, "and I'll do whatever I can."

Noam Scheiber and Michael Corkery contributed reporting. Susan Beachy contributed research.

David Yaffe-Bellany reports on the food industry and general business news. He graduated from Yale University and previously reported in Texas, Ohio and Connecticut. @yaffebellany

A version of this article appears in print on April 3, 2020, Section B, Page 8 of the New York edition with the headline: Employee Efforts to Unionize Collide With the Pandemic at Trader Joe's

EXHIBIT A

Package 000033 of 000035

Presiding Judge: HON. CLU A. STEVENS (630035)

Package : 000033 of 000035

Filed                    20-CI-002406    04/08/2020                David L. Nicholson, Jefferson Circuit Clerk

The Coronavirus Outbreak >

Frequently Asked Questions and Advice

Updated April 4, 2020

● **Should I wear a mask?**
The C.D.C. has recommended that all Americans wear cloth masks if they go
out in public. This is a shift in federal guidance reflecting new concerns that the
coronavirus is being spread by infected people who have no symptoms. Until
now, the C.D.C., like the W.H.O., has advised that ordinary people don't need to
wear masks unless they are sick and coughing. Part of the reason was to
preserve medical-grade masks for health care workers who desperately need
them at a time when they are in continuously short supply. Masks don't replace
hand washing and social distancing.

READ MORE ∨

Package.000034 of 000035

Presiding Judge: HON. OLU A. STEVENS (630305)

Package : 000034 of 000035

EXHIBIT A